Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:10 PM CDT

- 899 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VENTURA DUENAS v. PAPILLION FOODS
Cite as 32 Neb. App. 899

Marlene Ventura Duenas, appellee,
v. Papillion Foods, appellant.

___ N.W.3d ___

Filed May 21, 2024.    No. A-23-563.

1. **Workers' Compensation: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 2021), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong.

3. **Workers' Compensation: Judgments: Appeal and Error.** In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence.

4. **Workers' Compensation: Proof.** In order to recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment proximately caused an injury which resulted in disability compensable under the act.

5. **Workers' Compensation: Expert Witnesses.** If the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability.

6. ____: ____. It is the role of the compensation court as the trier of fact to determine which, if any, expert witnesses to believe.

- 900 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
VENTURA DUENAS v. PAPILLION FOODS
Cite as 32 Neb. App. 899

7. **Workers' Compensation.** Whether an injury arose out of and in the course of employment must be determined from the facts of each case.

8. **Workers' Compensation: Proof.** The two phrases "arising out of" and "in the course of" in Neb. Rev. Stat. § 48-101 (Reissue 2021) are conjunctive; in order to recover, a claimant must establish by a preponderance of the evidence that both conditions exist.

9. \_\_\_\_: \_\_\_\_. The "in the course of" requirement tests the work connection as to the time, place, and activity; that is, it demands that the injury be shown to have arisen within the time and space boundaries of employment and in the course of an activity whose purpose is related to employment.

10. **Workers' Compensation: Words and Phrases.** The phrase "arising out of," as used in Neb. Rev. Stat. § 48-101 (Reissue 2021), describes the accident and its origin, cause, and character, i.e., whether it resulted from the risks arising within the scope of the employee's job.

11. **Workers' Compensation.** All risks causing injury to an employee can be placed within three categories: (1) employment related—risks distinctly associated with the employment; (2) personal—risks personal to the claimant, e.g., idiopathic causes; and (3) neutral—a risk that is neither distinctly associated with the employment nor personal to the claimant.

12. \_\_\_\_. Harm that arises from risks distinctly associated with the employment is universally compensable.

13. \_\_\_\_. Generally, harm that can be attributed solely to personal or idiopathic causes is universally noncompensable.

14. \_\_\_\_. Harm that arises from neutral risks is generally compensable.

15. \_\_\_\_. Temporary disability benefits under the Nebraska Workers' Compensation Act are discontinued at the point of maximum medical improvement, because a disability cannot be both temporary and permanent at the same time.

16. **Workers' Compensation: Time.** The date of maximum medical improvement for purposes of ending a workers' compensation claimant's temporary disability is the date upon which the claimant has attained maximum medical recovery from all of the injuries sustained in a particular compensable accident.

17. **Workers' Compensation.** When an injured employee has reached maximum medical improvement, any remaining disability is, as a matter of law, "permanent," within the meaning of the Nebraska Workers' Compensation Act.

18. \_\_\_\_. Whether a workers' compensation claimant has reached maximum medical improvement is a question of fact.

19. **Workers' Compensation: Appeal and Error.** Workers' Comp Ct. R. of Proc. 11 (2021) ensures that compensation court orders are sufficiently

- 901 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VENTURA DUENAS v. PAPILLION FOODS
Cite as 32 Neb. App. 899

clear in addressing the parties' requested relief so that an appellate court can review the evidence relied upon by the trial judge in support of his or her findings.

Appeal from the Workers' Compensation Court: James R. Coe, Judge. Affirmed in part, and in part vacated and remanded with directions.

Charles L. Kuper, of Kuper, Wenninghoff & Block, P.C., L.L.O., for appellant.

Michael P. Dowd, of Dowd & Corrigan, L.L.C., for appellee.

Pirtle, Chief Judge, and Riedmann and Welch, Judges.

Riedmann, Judge.

## INTRODUCTION

Papillion Foods appeals the award of the Workers' Compensation Court finding Marlene Ventura Duenas (Duenas) suffered a work-related injury that left her permanently and totally disabled. Papillion Foods challenges the compensation court's causation and permanency determinations and asserts the award does not provide a basis for meaningful review in violation of Workers' Comp. Ct. R. of Proc. 11 (2021) (Rule 11).

We affirm the compensation court's findings of causation; however, because we conclude that the compensation court's award did not provide a meaningful basis for appellate review of its award of permanent and total disability benefits, we vacate that portion of the award and remand the matter to the compensation court with directions to enter an order in compliance with Rule 11.

## BACKGROUND

*Prior History.*

Duenas, who is from El Salvador, began working at Papillion Foods on April 5, 2021. She moved to the United States in 2015 and does not speak English. Duenas had previous

- 902 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VENTURA DUENAS v. PAPILLION FOODS
Cite as 32 Neb. App. 899

workers' compensation claims that stemmed from injuries in 2016 and 2017 involving her right knee, left knee, and lower back. She had previously been diagnosed with arthritis in both of her knees. On April 2, 2021, Duenas visited her physician for a wellness examination and had no complaints related to the arthritis or prior injuries to her knees or lower back.

*Work Injury.*

On April 8, 2021, Duenas was working at Papillion Foods and was issued rubber boots to put over her regular shoes. Duenas testified that the boots she was issued were too large and that she was told that was the only size available. Duenas stated that while walking down the stairs to go back to the workline after lunch, the boots bent back. She felt a "pop" in her left knee that radiated from back to front, and she was unable to walk. Duenas' knee was swollen that evening, and she still could not walk.

Ronald Dippel, the safety manager for Papillion Foods, investigated the accident. Dippel spoke with Duenas and another employee, and his understanding was that Duenas was injured coming down some stairs after lunch, that she felt pain, and that she then reported it. Dippel testified that Duenas never mentioned anything about her boots, nor did she make any gestures indicating that one of her boots bent. He also stated that at the time, Duenas was unsure what had caused her injury.

The accident report completed by Duenas stated that she "was coming back from my lunch and going down the stairs when my left foot bent." The report makes no mention of boots. Dippel stated that it was not until April 13, 2021, that Duenas said her boot curled underneath her foot, which she believed caused the injury. Dippel testified that if an employee had said the employee's boots were too large, a smaller size would have been issued immediately because the company recognizes that it is a potential slip hazard and there would have been a variety of sizes available.

- 903 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VENTURA DUENAS v. PAPILLION FOODS
Cite as 32 Neb. App. 899

*Medical Care and Treatment.*

The day after the accident, Duenas still could not walk and did not go to work. She was examined by the company health service and reported that "she was coming down the stairs at work and when she came to the bottom stair she felt a pop in the back of her left knee." Duenas was allowed to return to work with a knee sleeve, a thigh compression wrap, and the use of a walker or crutches.

Due to lack of improvement, an MRI was performed in May 2021 that revealed a torn meniscus. Duenas was referred through her employer to Dr. Brian Conroy, an orthopedic specialist. Duenas reported to him that "she was walking down the stairs while at work, when she bent her knee in a non typical fashion." Conroy injected her knee with cortisone and recommended she return to work with the assistance of crutches and a knee brace.

On June 15, 2021, Conroy issued a causation report in which he opined that Duenas' pain and disability were related to her fall at work, and not to her preexisting arthritis. He also recommended that Duenas undergo surgery on her knee. The surgery on Duenas' left knee was performed on August 18, and she was given a prescription for a wheelchair to use during her recovery.

Duenas attended physical therapy, and at various times, it was noted that she was having pain in both knees. It was also noted that she had pain in her lower back from sitting in the wheelchair for so long. Duenas testified that she began to experience back pain and that she also would use her right knee more to avoid pressure on her left knee. A physical therapy report from October 2021 reflected that Duenas had started back at work and was very sore.

Various work restrictions were provided during the course of Duenas' treatment. Following her August 18, 2021, surgery, she was off work until October 1. At that time, she returned to work, but she insisted she needed to remain in a wheelchair at all times. Conroy clarified that Duenas could perform only

- 904 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VENTURA DUENAS v. PAPILLION FOODS
Cite as 32 Neb. App. 899

sitting work, but that it could be in a desk chair, and she did not need to sit only in her wheelchair.

On October 12, 2021, Conroy noted that Duenas was experiencing back pain. It was his opinion that the back pain was a direct result of the work-related knee injury and treatment, specifically the non-weight-bearing status and then progressive weight bearing. On October 21, Conroy continued Duenas' restriction to only sitting work. A physical therapy report from November 22 stated that Duenas had a significant increase in pain in both knees and her lower back. On November 23, Conroy restricted Duenas to a total of 8 hours each workday, with 4 hours a day sitting and 4 hours a day standing, alternating between sitting and standing throughout the shift. She also could not squat, kneel, twist, or lift more than 10 pounds, but could walk 100 yards to and from a workstation.

In Conroy's progress note of January 11, 2022, he stated that he gave Duenas the option of a cortisone injection or permanent restrictions. He reported that Duenas stated she wanted a functional capacity evaluation and permanent restrictions, but then stated she wanted to continue therapy. Ultimately, it was decided that Duenas would try therapy for another month and continue the work restrictions in place and then would be evaluated in another month. Duenas' work restrictions remained the same, and she was to continue physical therapy with a recheck with Conroy in a month. He anticipated that at that time, she would be at maximum medical improvement.

Duenas' May 26, 2022, followup appointment with Conroy was canceled because the workers' compensation insurance carrier did not approve the visit. Duenas testified that on May 27, she was called to the Papillion Foods' office and was told she was being placed in a different job but that she did not believe it met her restrictions. Duenas stated she told Papillion Foods that she needed to be somewhere that she could be sitting all the time, but that "they didn't want to respect that." May 27 was the last day Duenas worked at Papillion Foods. Dippel testified that the job that Duenas was offered was

- 905 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VENTURA DUENAS v. PAPILLION FOODS
Cite as 32 Neb. App. 899

within her restrictions and that when they offered that job to her, she declined. Dippel was unaware of any time that Papillion Foods did not honor Duenas' work restrictions.

At the request of Papillion Foods, Dr. Ryan Arnold evaluated Duenas on June 3, 2022, and issued a report finding that Duenas had osteoarthritis of the left knee and morbid obesity and that these were not specifically related to the April 8, 2021, injury. He opined that Duenas' continued symptoms were the result of the chronic underlying progressive osteoarthritis condition of her knee and that further medical treatment would be treating that chronic underlying condition. In his opinion, she had reached maximum medical improvement regarding the April 8 injury.

Duenas returned to Conroy on June 14, 2022, at which time she was "limping quite badly." Conroy ordered an MRI of her left knee and restricted her to sitting work only. She returned to Conroy on July 12 to review the MRI findings. At that time, she had complaints of pain in both knees. Conroy opined that although Duenas had preexisting arthritis in her right knee, it was exacerbated by the injury in her left knee, which also caused her back to hurt. He injected her right knee.

On August 21, 2022, Conroy responded to a questionnaire from Duenas' attorney. The questionnaire asked whether Duenas was at maximum medical improvement and, if so, to state the impairment of her left lower extremity, right lower extremity, and back (body as a whole). Conroy responded that Duenas had a 25-percent whole person impairment.

In October 2022, Ted Stricklett, a court-appointed vocational counselor, issued a loss of earning capacity report, and he determined, based on her restrictions of sitting work only, that she had sustained a total loss of earning capacity.

On February 26, 2023, Conroy responded to several questions posed by Papillion Foods' attorney. He indicated that had he known of Duenas' prior workers' compensation claims, he would have inquired further and requested records. Conroy

- 906 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VENTURA DUENAS v. PAPILLION FOODS
Cite as 32 Neb. App. 899

was asked whether, based on evidence of Duenas' prior workers' compensation claims and other information regarding her lifestyle and walking abilities that Papillion Foods had detailed in a letter, his opinion would remain the same as it was on August 21, 2021. Conroy stated that Duenas was a "difficult person to assess," but that she objectively demonstrated the inability to walk when he saw her in the clinic. He stated that what was most outstanding to him was Duenas' "gait derangement" and that when he saw her in the clinic, she could not safely walk without a walker. He stated that if it were demonstrated she could ambulate better, that that may be a reason to reevaluate the impairment rating.

A functional capacity evaluation was conducted on April 28, 2023, which found that Duenas had restrictions of occasional standing and walking but that she also needed to use a supporting surface with all walking activities. Conroy agreed these were medically reasonable and necessary restrictions due to Duenas' work accident and supporting activities. However, due to the results of the April 28 evaluation, he lowered Duenas' whole body impairment rating to 20 percent. Stricklett updated his loss of earning capacity evaluation following the results of the updated functional capacity evaluation, but he continued to opine that Duenas experienced a total loss of earning capacity.

*Compensation Court Award.*

The compensation court described causation as "close," but accepted Duenas' version that she was injured when walking down the stairs and slipped due to the oversized boots Papillion Foods had issued to her. It noted Conroy recognized Duenas' preexisting arthritis but stated that based upon reasonable medical certainty, the pain and disability she was experiencing were from the fall at work, and that her back pain was a result of the work-related knee injury. The compensation court gave Stricklett's assessment a rebuttable presumption of correctness, and it accepted his opinion that

- 907 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VENTURA DUENAS v. PAPILLION FOODS
Cite as 32 Neb. App. 899

Duenas had a 100-percent loss of earning capacity, despite the findings in the later functional capacity evaluation.

The compensation court ordered Papillion Foods to pay Duenas permanent and total disability benefits from the date Duenas last worked at Papillion Foods on May 27, 2022, to the date of the hearing, and for so long in the future as Duenas remained permanently and totally disabled. It also ordered Papillion Foods to pay outstanding medical expenses and found that Duenas was entitled to future medical care as set forth in Conroy's report of "July 12 [sic]." Papillion Foods appeals.

## ASSIGNMENTS OF ERROR

Papillion Foods assigns, reordered, that the compensation court erred as a matter of law and fact by (1) determining that Duenas suffered an accident arising out of and in the course of her employment with Papillion Foods and (2) adopting the opinion of Conroy. It also assigns that the compensation court (3) erred in determining that Duenas is permanently totally disabled and (4) failed to issue an award that provides a basis for meaningful review, in violation of Rule 11.

## STANDARD OF REVIEW

[1] Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 2021), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Cajiao v. Arga Transport*, 30 Neb. App. 700, 972 N.W.2d 433 (2022).

[2,3] On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Id*. In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an

- 908 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VENTURA DUENAS v. PAPILLION FOODS
Cite as 32 Neb. App. 899

appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id*.

## ANALYSIS

[4] In order to recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment proximately caused an injury which resulted in disability compensable under the act. *Hintz v. Farmers Co-op Assn*., 297 Neb. 903, 902 N.W.2d 131 (2017).

[5,6] If the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability. *Id*. The rule in this jurisdiction is that triers of fact are not required to take the opinions of experts as binding on them. *Id*. It is the role of the compensation court as the trier of fact to determine which, if any, expert witnesses to believe. *Id*.

*Accident in Course of Employment*.

Papillion Foods assigns that the compensation court erred in determining that Duenas suffered an accident arising out of and in the course of her employment. It attacks both Duenas' credibility in her recitation of how the injury occurred and the legal sufficiency of Conroy's opinion. We find no error in the compensation court's determination.

[7-9] Whether an injury arose out of and in the course of employment must be determined from the facts of each case. *Webber v. Webber*, 28 Neb. App. 287, 942 N.W.2d 438 (2020). The two phrases "arising out of" and "in the course of" in Neb. Rev. Stat. § 48-101 (Reissue 2021) are conjunctive; in order to recover, a claimant must establish by a preponderance of the evidence that both conditions exist. *Webber v.*

- 909 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VENTURA DUENAS v. PAPILLION FOODS
Cite as 32 Neb. App. 899

*Webber, supra*. The "in the course of" requirement tests the work connection as to the time, place, and activity; that is, it demands that the injury be shown to have arisen within the time and space boundaries of employment and in the course of an activity whose purpose is related to employment. *Id*.

[10-14] The phrase "arising out of," as used in § 48-101, describes the accident and its origin, cause, and character, i.e., whether it resulted from the risks arising within the scope of the employee's job. *Webber v. Webber, supra*. All risks causing injury to an employee can be placed within three categories: (1) employment related—risks distinctly associated with the employment; (2) personal—risks personal to the claimant, e.g., idiopathic causes; and (3) neutral—a risk that is neither distinctly associated with the employment nor personal to the claimant. *Id*. Harm that arises from risks distinctly associated with the employment is universally compensable. *Id*. Generally, harm that can be attributed solely to personal or idiopathic causes is universally noncompensable. *Id*. Harm that arises from neutral risks is generally compensable. *Id*.

Here, the compensation court stated that it accepted Duenas' testimony that she was injured when she walked down the stairs and slipped due to the oversized boots that Papillion Foods issued to her. As the trier of fact, the workers' compensation court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Parks v. Hy-Vee*, 307 Neb. 927, 951 N.W.2d 504 (2020). Our standard of review requires us to consider the evidence in the light most favorable to the successful party. See *Cajiao v. Arga Transport*, 30 Neb. App. 700, 972 N.W.2d 433 (2022). Accepting Duenas' testimony, we believe it shows her accident arose out of and in the course of her employment. She was issued the boots as part of her work the day of the accident, and due to their size, they bent back and caused her to slip, which led to immediate pain in her left knee.

Papillion Foods challenges Duenas' version of the accident and argues that it is not credible because her initial reports

- 910 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VENTURA DUENAS v. PAPILLION FOODS
Cite as 32 Neb. App. 899

of injury fail to mention the boots as the cause of her knee injury. However, in her initial written report, she indicated that her "left foot bent." Considering that Duenas does not speak English, we cannot conclude that her report is inconsistent with her claim. Furthermore, she testified at trial that she relayed the information regarding the boots when she was completing the accident report, which is written partly in English and partly in Spanish. The compensation court assessed Duenas' credibility and believed her version. The court was not clearly wrong in doing so.

Papillion Foods also argues that Duenas' injury did not arise out of her employment because her preexisting arthritis in her left knee was a personal risk that caused her injury in a manner that was not unexpected or unforeseen. Arnold supports this argument, stating that Duenas' meniscus tear was a "tear of attrition," which was a natural progression of her preexisting arthritis. And Papillion Foods argues that Conroy's opinion that "her meniscus tear *may* be some degree [fresh] rather than a chronic root tear that comes with arthritis" is insufficient to prove causation. (Emphasis supplied.) We acknowledge that medical opinions couched in terms of possibility are insufficient. See *Edmonds v. IBP, inc.*, 239 Neb. 899, 479 N.W.2d 754 (1992). However, Conroy also opined, to a reasonable degree of medical certainty, that Duenas' pain and disability were related to her fall at work, adding, "I recognize she has pre-existing arthritis but that was not affecting her before the fall according to the patient." In a response of August 21, 2022, Conroy attributed Duenas' knee injury to the oversized boots.

The compensation court accepted Duenas' testimony, as well as Conroy's opinion that the pain and disability she was experiencing were due to the work-related accident, and we cannot find that it was clearly wrong to do so. The compensation court did not err in determining Duenas' injury arose out of and in the course of her employment.

- 911 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VENTURA DUENAS v. PAPILLION FOODS
Cite as 32 Neb. App. 899

*Conroy's Opinion.*

Papillion Foods assigns that the compensation court erred in adopting Conroy's opinion not only on causation as addressed above, but also on the nature and extent of Duenas' injury. Papillion Foods argues that Conroy did not consider Duenas' prior workers' compensation claims and collateral information that Duenas' low-back pain had resolved; therefore, the compensation court should have discredited his opinion. We disagree.

We recognize that there was evidence that Duenas had previous workers' compensation claims regarding her knees and back, but there was also evidence that those body parts were not causing Duenas any pain or disability just prior to the April 8, 2021, injury. We find no error in the court's reliance upon Conroy's opinion because even considering those prior claims, her health status immediately prior to her accident refutes any continuing issues.

Papillion Foods also argues that Duenas had reported that her back pain had resolved as evidenced by a progress note of June 23, 2022, which indicated she had scheduled an appointment for back pain, but she no longer had that discomfort. When Papillion Foods advised Conroy of this, he responded that he did not see written material indicating back pain resolution, but if he had, it would affect his opinion.

However, other evidence in the record indicates that Duenas' back pain had not completely resolved by June 2022. Conroy treated Duenas on July 12 for knee pain. In his notes from that visit, he stated that her right knee arthritis has "been exacerbated by the injury in her left knee which is [sic] also caused her back to hurt." We note, however, that under the heading "Review of Systems," she was listed as being "[n]egative for back pain." Furthermore, in Stricklett's loss of earning capacity report of October, he noted that Duenas stated she had "'a lot of pain in [her] back. . . . [Her] back is really bad so [she] must use a walker.'"

- 912 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
VENTURA DUENAS v. PAPILLION FOODS
Cite as 32 Neb. App. 899

Papillion Foods' argument is that Conroy's opinion would have changed if he had known Duenas' low-back pain had resolved in June 2022. There is evidence, however, that her low-back pain had not resolved. Therefore, we cannot say that Conroy's opinion regarding Duenas' continued back pain is refuted by the record, nor that the compensation court was clearly wrong in adopting his opinion.

*Permanent and Total Disability and Rule 11.*

In its last two assigned errors, Papillion Foods assigns that the compensation court erred in finding Duenas permanently and totally disabled and that its order did not comply with Rule 11 of the compensation court rules of procedure. Because our resolution of these two issues is related, we will address these assigned errors together.

[15-18] Temporary disability benefits under the Nebraska Workers' Compensation Act are discontinued at the point of maximum medical improvement, because a disability cannot be both temporary and permanent at the same time. *Krause v. Five Star Quality Care*, 301 Neb. 612, 919 N.W.2d 514 (2018). The date of maximum medical improvement for purposes of ending a workers' compensation claimant's temporary disability is the date upon which the claimant has attained maximum medical recovery from all of the injuries sustained in a particular compensable accident. *Id.* When an injured employee has reached maximum medical improvement, any remaining disability is, as a matter of law, "permanent," within the meaning of the Nebraska Workers' Compensation Act. *Krause v. Five Star Quality Care, supra.* Whether a workers' compensation claimant has reached maximum medical improvement is a question of fact. *Id.*

[19] Rule 11 provides in part that "[d]ecisions of the court shall provide the basis for a meaningful appellate review. The judge shall specify the evidence upon which the judge relies." Rule 11 ensures that compensation court orders are sufficiently clear in addressing the parties' requested relief so that an appellate court can review the evidence relied upon by the trial

- 913 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VENTURA DUENAS v. PAPILLION FOODS
Cite as 32 Neb. App. 899

judge in support of his or her findings. *Lewis v. MBC Constr. Co.*, 309 Neb. 726, 962 N.W.2d 359 (2021).

Here, the compensation court found Duenas was entitled to permanent and total disability but made no finding that she had reached maximum medical improvement as to her knee and back injury, the date on which that was attained, or the evidence upon which it relied to make those determinations. Rather, it ordered Papillion Foods to pay permanent and total disability benefits from May 27, 2022, the date Duenas was last employed with Papillion Foods. Our review of the record does not reveal any correlation between that date and a finding of maximum medical improvement by any health care professional.

We also note that in its award, the court did not make a specific finding as to Duenas' physical restrictions. It noted the loss of earning capacity evaluation by Stricklett of October 24, 2022, in which Stricklett stated that "based upon Dr. Conroy's restrictions of 'sitting work only' [Duenas] had a loss of access to employment of 100 percent and . . . loss of earning capacity of 100 percent." It also recited the results of the functional capacity evaluation of April 27, 2023, limiting Duenas to a "medium physical demand ability" and that she "could lift 20 to 50 pounds occasionally and 10 pounds constantly"; however, the award does not make a finding of what Duenas' physical restrictions actually are. Papillion Foods argues that without guidance as to what her permanent restrictions are, it is unable to later seek a modification pursuant to Neb. Rev. Stat. § 48-141 (Reissue 2021). We agree.

Because the award does not specify whether the compensation court had found Duenas at maximum medical improvement, the date on which that would have occurred, the extent of her permanent physical restrictions, or the evidence it relied upon in reaching those findings, it does not provide for meaningful appellate review on the issue of permanent and total disability. Because proof of permanent impairment of the body as a whole is a predicate to a determination of loss of earning capacity, the absence of a finding of maximum medical

- 914 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VENTURA DUENAS v. PAPILLION FOODS
Cite as 32 Neb. App. 899

improvement precludes the court's determination of Duenas' loss of earning capacity. See *Visoso v. Cargill Meat Solutions*, 285 Neb. 272, 826 N.W.2d 845 (2013). In other words, without a finding of maximum medical improvement, loss of earning capacity and permanent and total disability cannot be determined. Furthermore, without identifying Duenas' permanent physical restrictions, Papillion Foods is hindered in its ability to seek a later modification if her condition improves. We therefore vacate that portion of the court's award relating to the award of permanent and total disability payments and remand the cause to the compensation court with directions to issue an award that complies with Rule 11. Papillion Foods points to various conflicting evidence that it states the compensation court failed to rule upon or address in addition to the issue of maximum medical improvement, and it argues that this shows the award does not provide for meaningful appellate review. We reject those arguments. The award addressed the evidence presented by both parties, including how the injury occurred, the medical treatment Duenas received, and the opinions of the professionals who examined Duenas and were involved in her care. Aside from the issues of maximum medical improvement, permanent and total disability status, and the extent of her restrictions, the award allows for meaningful appellate review and thus complies with Rule 11.

*Attorney Fees.*

Duenas requests that we award her attorney fees pursuant to Neb. Rev. Stat. § 48-125(4)(b) (Reissue 2021). Because we are in part vacating the award, we deny her request.

## CONCLUSION

We vacate the compensation court's finding of permanent and total disability and remand the cause to the compensation court with directions to enter an order in compliance with Rule 11. We affirm the award in all other respects.

Affirmed in part, and in part vacated
and remanded with directions.